# EXHIBIT A

# Disciplinary Commission

Adrienne Meiring, Executive Director • 317-232-1807 • courts.in.gov

July 29, 2026

CERTIFIED MAIL NUMBER 9589 0710 5270 3422 0469 74

Theodore Edward Rokita, Esq.
c/o James J. Ammeen
Attorney at Law
Barrister Building #550
115 East Market Street
Indianapolis, IN 46204

RE: Jess Sampson vs. Theodore E. Rokita
Our Matter No. 26-1114

Dear Theodore Rokita:

I am enclosing a copy of a grievance filed against you with the Disciplinary Commission by Jess Sampson.

This is a demand for a written response. You are required to provide a written response to this office within thirty (30) days of the date you receive this letter, or such additional time as you are granted upon request, as provided by Admission and Discipline Rule 23, §§ 10(a)(2) and (e). You could be suspended from the practice of law for failure to respond to this grievance and cooperate with our investigation, as provided by Admission and Discipline Rule 23, § 10(f). In addition, your knowing failure to respond or failure to timely respond may subject you to disciplinary action for a violation of Rule of Professional Conduct 8.1(b), even in the absence of any other misconduct. Please submit any documentation that is material to the issues presented in the grievance.

**An extension of time to respond to the grievance must be submitted in writing to this office. An extension of time will not be granted by telephone request. Please do not call the office to request an extension of time to file a response.**

A member of our staff will conduct a preliminary investigation of this grievance based upon it and your response, as well as other information. A decision will then be made to either: 1) dismiss this matter as not presenting reasonable cause to believe you engaged in misconduct, or 2) docket the case for further investigation and presentation to the full Disciplinary Commission. The Commission will then consider whether reasonable cause exists to believe you engaged in misconduct warranting disciplinary action.

Theodore Edward Rokita, Esq.
c/o James J. Ammeen
Attorney at Law
July 29, 2026
Page Two

Thank you for your anticipated cooperation.

Sincerely,

Adrienne L. Meiring

Adrienne L. Meiring
*Executive Director*

ALM/jb
Enclosure

# INDIANA SUPREME COURT DISCIPLINARY COMMISSION
## Request for Investigation

Email completed form to: DCGrievance@courts.in.gov

Or mail to: 251 N. Illinois Street, Ste. 500
Indianapolis, Indiana 46204

*Any attachments to this form must be saved as a part of a single PDF document. Please visit "How to lock a fillable form" to learn how to correctly save your completed form. A blank template page is provided at the end of this form for a detailed statement of your basis for this complaint against the attorney. Include copies (not originals) of documents that support your complaint. If you are unable to scan, please list all documents you have to support your complaint.*

| **GRIEVANT'S INFORMATION (Who is filing this complaint?)** | | | | | |
|---|---|---|---|---|---|
| Name | Jess Sampson | | | | |
| Address | 5943 N 600 E | | | Apartment/Unit # | |
| City | Rochester | State | IN | Zip Code | 46975 |
| Home Phone Number | (574) 242-0033 | Work Phone Number | (574) 242-0033 | | |
| Email address | | | | | |

| **ATTORNEY INFORMATION** | |
|---|---|
| Name of Attorney | Theordore E. Rokita |
| Address of Attorney | Office of Attorney GeneralIndiana Government Center South302 West Washington St., 5th Floo |
| Phone Number of Attorney | (317) 234-6784 |

| **CASE INFORMATION** | | | |
|---|---|---|---|
| Cause number of the case | 25D01-2512-PL-000903 | Court for the case | |
| Date employed | | Reason for employing | |
| Agreed Attorney Fees | | Total fees paid | |

**NATURE OF COMPLAINT: Using the template on the next page, please state in full detail the basis of your complaint against the attorney. If necessary, use additional paper, or any other form as long as the information is complete, and the complaint is sworn to be true. Keep a copy of the complaint and any attachments for your personal records, as staff will not be able to provide you with any copies later.)**

☑ I affirm, under penalties of perjury that the foregoing representations are true.

☑ I understand that the Indiana Supreme Court Disciplinary Commission does not have authority to intervene on my behalf in any proceeding or to change any decision reached by a court. In filing this complaint, I agree to cooperate with the Commission and its agents and to testify, if asked, concerning the matters raised in my complaint. I understand that the attorney will receive a copy of my complaint and that Indiana Supreme Court Admission and Discipline Rule 23, Section 25, provides that I am immune from civil suit against me based on the content of my allegations of attorney misconduct to the extent those allegations are made to the Commission or in the course of the Commission's investigation or hearing procedures under Ind. Admission and Discipline Rule 23. Therefore, I am not immune from civil suit for any allegations I make public or which I communicate to any entity other than the Commission.

(Electronic signature is acceptable: i.e., the indicator /s/ followed by the person's name)

/s/ Jess Sampson
Signature

12/17/2025
Date

See attached narrative of circumstances.

See attached complaint filed by Rokita.

See Motion to Disqualifiy.

See IA generated response to the following inquiry:

May a state attorney general use his office to resolve his own personal debt or grievance?

AI Overview
No, a state attorney general cannot use their official office, letterhead, or authority to collect their own personal debt. Such an action would be an abuse of power and a significant ethical and legal violation, likely constituting a severe conflict of interest and potentially violating state and federal laws such as the Fair Debt Collection Practices Act (FDCPA) and general ethics statutes.
Legal and Ethical Implications
Abuse of Public Office: The primary role of the Attorney General's office is to serve the public interest and enforce state laws, not to conduct personal business or pursue private gain.
Conflict of Interest: Using state resources and authority for a personal financial matter creates a direct conflict of interest, as personal financial interests would interfere with the duty to act impartially and in the best interest of the government.
Misrepresentation of Authority: Communications on official letterhead for personal matters would falsely imply the weight and authority of the state government is behind a private claim, which could be considered a deceptive practice.
Violation of FDCPA: While a state, in its official capacity, can collect debts owed to it (and can hire outside counsel to do so using state letterhead), the FDCPA prohibits abusive, unfair, or deceptive practices by debt collectors for personal debts. An Attorney General acting on a personal debt would not be acting as a state officer in that context.
Potential Penalties: An Attorney General who engages in such conduct could face severe penalties, including disbarment, fines, civil lawsuits, and potentially criminal charges for official misconduct or corruption.
The Attorney General, like any other citizen, must pursue personal debts through standard legal channels (e.g., small claims court, private attorneys, or collection agencies) without involving their official government position or resources.

On July 14 2025 I recived a facebook message from Todd Rokita asking for assistance to get his jet ski running he asked a bunch of questions and sent a couple videos and i told him with out doing my on diagnostics i couldn't help him because it could be a number of different things at this point i told him my name and gave him my personal contact info and if he needed further assistance or wanted me to do diagnostics on jet ski to get ahold of me on July 17 he replied ok thanks he would contact me the next day to set up a time and date to drop off his jet ski. On July 18 Todd Rokita called my personal contact and i missed the call then i received a text message and never responded to either as i was super busy at the time. On July 19 i received another text message from Todd Rokita asking if it was ok to drop his jet ski off the next day i responded thru text message and told him yes i would be around all day and gave him my home address.Todd Rokita showed up in person with his jet ski to my residents and dropped it off for a diagnostic test for a no start problem at this time i tested many electrical parts as a couple parts failed all tests at this point i diagnosised a no spark issue i contacted Todd Rokita via text and informed him of the test results of a bad cdi box and a pulsar coil which are componits that provide spark to the engine i also told him it could possibly be more but without tearing the jet ski down to physically see what was going on i couldnt be for sure it was just them 2 parts that finialized the diagnostic proceedure he then asked what the procedure was to move forward with the jet ski i gave him some prices that i had found on ebay for the parts and a labor price to do the work he asked if i sourced the parts i told him i would need him to cover parts cost and he would pay the labor and diagnostic when the job was complete and he was in agreence to i then sent him direct ebay links so he could order his own parts and have them shipped to my address in the mean time i tore the jet ski down to find that the parts that i diagnoised bad were bad along with another part which was a flywheel i contacted mr.rokita and advised him he was gonna need to replace the flywheel i sent him several photos of all damage that was done and of all parts that were bad he then asked were to get a flywheel once again i sent him a direct link to purchase one and send it just like he did the other parts once i received the flywheel i then put the jet ski all back together will all the new parts and success it ran the way it should no issues july 31i then sent him a text message letting him know it was done and ready to be picked along with a bill for $800.00 he said great ill be there to pick it up this weekend on august 1he texted messaged me and asked me to write a paper invoice for the repairs on the jetski i told him i would but i would have to charge him tax and he informed me he didnt have to pay tax so against my better judgement i wrote the invoice for him with no tax attached as he stated he may need it for engine builder or small claims court purposes.on aug 3 todd rokita showed up to my residents to pick up his jetski as well as pay the bill on it and at the same time we went over the old parts and showed him it ran as it should now and should be good to go that completed the job.later on the same evening Todd Rokita called and stated he was riding the jet ski and it quit running on him i told him to bring it back and i would go over it and see what was going on with it he brought it back i took it apart and found that the flywheel

was loose at this point i checked everything and put the jet ski back together for second time and took it out to my local lake myself and rode it after a hour of riding the jet ski perfomed the same problem for me as it did for him so at this point i know for certain it has a crankshaft issue i then informed mr rokita that it has a crank shaft issue he then sends me photos and mesages from previous owner and the jet ski having crank shaft problems in the past at that time i told him i know its not what you wanna hear but your gonna have to either replace the crankshaft or have it fixed to solve the problem he then asked me if i had a local machine shop i could go thru and i advised him i would take the engine out and he could take it to his own choice of place to perform the work it needed to have done as it was a very critical job and i didnt want any liability issue's so he would have to do that also gave him a couple other opitions of how to take care of the issue but none of the choices were a cheap fix and wasnt sure what kind of money he was looking to spend he then states he is sick and livid about it he then asked about selling it for parts and i told him it was a big hassel and takes someone that does it all the time and he would never get his money out of it he then attemped to get me to fix it in many different ways that was not correct and would lead to failure i then advised him again i woudnt do any work that way because of the liability issues.on aug13 i sent mr.rokita a couple photos of personal jet skis i was gonna sell do to i dont ride them enough i sent photos and descriptions of the jet skis and told him i didnt need to or have to sell them but would if he knew what i meant told him he could check them out and ride them no commitments he said he wanted to buy one or the other he then asked my opnion which one i though would be best for him i gave him my honest opinion from the questions he asked me but told him he could deciede for himself at this point he say lets talk tomorow to finialize what jet ski he wants to buy and what to do with his original jet ski he brought .on aug 15 Todd Rokita and i talked and he had decided he wanted to buy a 2001 seadoo gtx limited and wanted to pick up on Aug 16 and was trying to get me to take his original jet ski i told him i didnt want it.at this point i unloaded the original jet ski Todd Rokita had from his trailer and loaded the 2001 seadoo gtx he was coming to get and sent him a photo of it and told him it was ready to go.on aug16 Todd Rokita showed up to my residence to finish up the purchase of the 2001 seadoo gtx at this time we went over it having a new built motor and it was under break in period and he had to follow break in conditions or it could cause major engine failure told him no consist rpms and definintly no full throttle runs for atleast 10 hours and he said he completly understand i also told him he could find the same proceedure in the seadoo owners manual he went over the jet ski showed him everything was is perfect working order showed it ran no issues and tried to get him to take to my local lake and ride it to make sure it was what he wanted and there was no issues he was concerned with he told me he didnt have time as he has to meet someone at his place really soon and i told him i wished he would ride it first to make me feel more comfortable about it and he still insisted he was okay with not riding it at this point i gave Todd Rokita a clean clear title signed off from previous owner no date no selling price as i never

registered the jet ski and a bill of sale from myself stating i sold him the jetski as is for the selling price of $3000 dollars and away he went.On aug 17 later in the evening Todd Rokita sent me a text message video saying i took this thing out for a full throttle run it bogged down and died and he was stuck on the water i tried to navigate him on some ways to get it to start to get him back to land with no success i then told him to bring the jet ski back and we would go over it together to see what was wrong with it he brought it back the same evening and we did just that first we did a compression check front cylinder 100 psi back cylinder 0 psi which both cylinders should read the same psi i told him it was blown up but we would use a endoscope to look down in the cylinders to confirm that was what was going for sure and indeed it was found to be blown up at this point Todd Rokita demanded i give his money back and i advised him that's not how it works when you buy something as is and have already been out beating on it after knowing no full throttle runs during break in period was a condition of the sale but me being who i am i told him i would meet him in the middle with the issue as my reputation means more than the money at this point i told him i would order all replacement parts out of my pocket and do all the labor to get it back to right if he would like me to do that and he was in agreeance that would make him happy so i ordered all replacement parts including upgraded parts he wanted installed that cost me $400 dollars extra that he said he would pay for.when parts arrived i rebuilt complete top of engine on aug 31 Todd Rockita text me and asked if we was good to meet the next day to test the jet ski out i told him that was fine.on sep 1 Todd Rokita texted and said he would be at my residence at 12:30 when he arrived we went over several steps to ensure everything was good on the jet ski we first did a compression check both cylinders checked out at 100 psi which is perfect and he agreed next we hooked a water hose up to the jet ski and started it ran it for a short bit with a few slight throttle increase to show no running issues as well as no over heating issues at this point we go over the same break in conversation as the first time and told him anytime you build or rebuild an engine it requires 10 hours break in time period if you dont follow the correct break in strategy it will destroy the engine again and he said he completly understood when we done with that he noticed another personal jet ski of mine and told me he has a buddy looking for one and i told him i didnt really wanna sell it but i would for the right price and then we left to my local boat ramp on lake manitou rochester indiana for the last step and that was a test ride Todd Rokita rode the jet ski for 1 hour and 15 mins no issues at all at this time we loaded jet ski on the trailer and pulled it out of the water and pulled in a parking spot and park at this moment Todd Rokita shook my hand and said he was completly happy with the jet ski and thank you for doing what i did we good in his eyes i advised him it wasnt a problem and just know from here on out any damages or problems that occur was his own personal problem at this point and he agreed to that as well.On Sep2 Todd Rokita texted me and said he had put more hours on the jet ski at his lake and everything was good he also said he was reading the owners manual for the 2001 seadoo gtx about different things and also asked for photos and info on the jet ski he thought

his buddy may want to buy so i sent him 2 photos and info about the jet ski never heard anything else.On Sep 18 16 days later i messaged Todd Rokita and asked him whatever happen with his buddy and the jet ski at this time i advised him that i was trying to buy a corvette and need the extra cash so i would make someone a great deal on the jet ski if it was bought by friday he asked what kind of corvette i was buying and he said he may have corvette he could sell me i told him he couldnt come close to the deal i had going on plus his car wasnt what i was looking for he then said he was gonna go ahead and buy the other jet ski he then asked if the title was in my name and i told him it was an open title just like the last jet ski was signed off from previous owner no date no selling price also sent him photos of front and back of title and he said ok let plan for 2:30 tomorrow.On Sep 19 Todd Rokita messaged me and said im bringing the money today but may not have a vechile to take it with me he said he would come back and get it sunday or monday and i told him that was fine id give him the title and keys and he could pick it up at his convenience he said ok later on the same day he sends me a video of himself riding the 2001 seadoo gtx jet ski i sold him having and issue i asked him what was up with it he stated so far looks like a fouled spark plug said he checked compression both was at a 100 psi just like the day he got it back he also stated that after 7 hours of 4500 rpm or less break in time i took it out for it first open throttle run he also stated he wanted to square up on the $400 dollars he owed me that was never paid at the time he got the jet ski back the second time he stated he replaced the spark plugs and was good to go and was gonna take it out for another run he said it ran well for a while and then died heard some clunking around wont turn over doesnt sound good still on the water a few minutes later he messaged said he was getting towed in at this time he sent me a video of what it was doing and asked what i thought it was i told him i wasnt 100% sure what was up but at this point he is late as im waiting on him to show up to complete the deal on the second jet ski so i message and ask him if he is still coming my way to finish deal and he says not really in the mood to buy another jet ski anymore given this event but dont wanna leave you stranded either do you have a backup plan/buyer?i told him i was depending on his word to make my deal happen for sure but could not make him buy something if he didnt want to period so i told him to tell me what it was gonna be id let him make the decision but either way i needed to know i never got a response so i called Todd Rokita and he stated he was thinking he should be able to bring the first jet ski back after messing it up a second time and give me $500 for the jet ski he was supposed to purchasing from me at this time i told him he was absolutely nuts i wasnt selling him anything and that he could take the jet ski i sold him along with the $400 he owed me and come get his original jet ski outta my yard and shove all three of them up his ass and loose my number and thats the last i ever heard from the guy.

027001

## Invoice

| SOLD TO | SHIP TO |
|---|---|
| [illegible] | [illegible] |
| ADDRESS | ADDRESS |
| [illegible] | [illegible] |
| CITY, STATE, ZIP | CITY, STATE, ZIP |
| [illegible] | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE |
|---|---|---|---|---|
| | | | | |

| | | | |
|---|---|---|---|
| [illegible] | [illegible] | | [illegible] |
| | [illegible] | | 150 |
| [illegible] | [illegible] | | [illegible] |
| | [illegible] | | |
| | | | 800 |

adams T5080 07-18

A-9

OFFICE OF THE ATTORNEY GENERAL
STATE OF INDIANA

302 W. WASHINGTON ST. 5TH FLOOR
INDIANAPOLIS, IN 46204-2770

TODD ROKITA
ATTORNEY GENERAL

November 13, 2025

Jess Sampson
5943 N 600 E
Rochester, IN 46975

VIA CERTIFIED MAIL

**Re: Notice of Violations**

Dear Mr. Sampson,

The Office of the Indiana Attorney General ("OAG") has been investigating your business practices involving the advertising and sale of used vehicles and parts.

It is the OAG's position that you have committed violations of the Deceptive Consumer Sales, Indiana Code § 24-5-0.5-1 *et seq.*, specifically as follows:

- You have advertised for sale and/or sold various motor vehicles, watercraft, and trailers without the proper dealer licenses issued by the Indiana Secretary of State, in violation of Ind. Code § 24-5-0.5-3(a) and Ind. Code § 24-5-0.5-10.

- You have stored and advertised for sale and/or sold various salvage vehicle/watercraft parts without a salvage recycler license issued by the Indiana Secretary of State, in violation of Ind. Code § 24-5-0.5-3(a) and Ind. Code § 24-5-0.5-10.

- You represented on certain online advertisements posted to Facebook Marketplace that you are "licensed." It does not appear that you hold any motor vehicle dealer license, watercraft dealer license, or salvage recycler license issued by the Indiana Secretary of State's Office. Such a misrepresentation is a violation of Ind. Code § 24-5-0.5-3(a) and Ind. Code § 24-5-0.5-3(b)(7).

- You have acquired and sold numerous motor vehicles, watercraft and trailers without titling the vehicles/trailers in your name prior to sale, in violation of Ind. Code § 24-5-0.5-3(a), as well as various Indiana titling and sales tax statutes.

- You have made misrepresentations regarding the quality of vehicles sold to consumers in violation of Ind. Code § 24-5-0.5-3(a) and Ind. Code § 24-5-0.5-3(b)(1) and (2). Specifically, you represented the quality of a watercraft sold to consumer Todd Rokita. Initially, you attempted to repair a Yamaha watercraft for Mr. Rokita in the amount of $1,400.00. The repairs were unsuccessful, and you instead sold Mr. Rokita a 2001 Seadoo watercraft for $3,000.00. You represented in text messages to Mr. Rokita that the 2001 Seadoo had a rebuilt engine and a new oil pump. The Seadoo did not have a rebuilt engine or new oil pump as represented. Mr. Rokita incurred a repair bill of $5,912.33 to attempt to get the watercraft into the condition you represented at the time of sale.

As it appears you have not had any prior violations with the OAG, and in accordance with the OAG's policy to prioritize consumer restitution in lieu of litigation and civil penalties where appropriate, the OAG would propose to resolve this matter with your payment of consumer restitution in the amount of $8,912.33 and the OAG's warning to cease the conduct referenced above.

If this resolution is acceptable, please notify me in writing of your acceptance no later than November 26, 2025 and provide a check for consumer restitution in the amount of $8,912.33, representing the cost of the 2001 Seadoo and the subsequent repairs, payable to Todd Rokita and sent to my attention at:

Office of the Indiana Attorney General
Attn: Mark Snodgrass
302 West Washington Street, 5th Floor
Indianapolis, IN 46204

If I do not hear from you by November 26, 2025, the OAG may pursue all available remedies against you, including the filing of a Complaint for the violations outlined herein seeking consumer restitution, costs and civil penalties of $5,000.00 per violation.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact me. Your time and attention in this matter is greatly appreciated.

Sincerely,

Mark Snodgrass

Mark Snodgrass
Deputy Attorney General
Consumer Protection Division

Phone: (317) 234-6784
Email: Mark.Snodgrass@atg.in.gov

On July 14 2025 I recived a facebook message from Todd Rokita asking for assistance to get his jet ski running he asked a bunch of questions and sent a couple videos and i told him with out doing my on diagnostics i couldn't help him because it could be a number of different things at this point i told him my name and gave him my personal contact info and if he needed further assistance or wanted me to do diagnostics on jet ski to get ahold of me on July 17 he replied ok thanks he would contact me the next day to set up a time and date to drop off his jet ski. On July 18 Todd Rokita called my personal contact and i missed the call then i received a text message and never responded to either as i was super busy at the time. On July 19 i received another text message from Todd Rokita asking if it was ok to drop his jet ski off the next day i responded thru text message and told him yes i would be around all day and gave him my home address.Todd Rokita showed up in person with his jet ski to my residents and dropped it off for a diagnostic test for a no start problem at this time i tested many electrical parts as a couple parts failed all tests at this point i diagnosised a no spark issue i contacted Todd Rokita via text and informed him of the test results of a bad cdi box and a pulsar coil which are componits that provide spark to the engine i also told him it could possibly be more but without tearing the jet ski down to physically see what was going on i couldnt be for sure it was just them 2 parts that finialized the diagnostic proceedure he then asked what the procedure was to move forward with the jet ski i gave him some prices that i had found on ebay for the parts and a labor price to do the work he asked if i sourced the parts i told him i would need him to cover parts cost and he would pay the labor and diagnostic when the job was complete and he was in agreence to i then sent him direct ebay links so he could order his own parts and have them shipped to my address in the mean time i tore the jet ski down to find that the parts that i diagnoised bad were bad along with another part which was a flywheel i contacted mr.rokita and advised him he was gonna need to replace the flywheel i sent him several photos of all damage that was done and of all parts that were bad he then asked were to get a flywheel once again i sent him a direct link to purchase one and send it just like he did the other parts once i received the flywheel i then put the jet ski all back together will all the new parts and success it ran the way it should no issues july 31i then sent him a text message letting him know it was done and ready to be picked along with a bill for $800.00 he said great ill be there to pick it up this weekend on august 1he texted messaged me and asked me to write a paper invoice for the repairs on the jetski i told him i would but i would have to charge him tax and he informed me he didnt have to pay tax so against my better judgement i wrote the invoice for him with no tax attached as he stated he may need it for engine builder or small claims court purposes.on aug 3 todd rokita showed up to my residents to pick up his jetski as well as pay the bill on it and at the same time we went over the old parts and showed him it ran as it should now and should be good to go that completed the job.later on the same evening Todd Rokita called and stated he was riding the jet ski and it quit running on him i told him to bring it back and i would go over it and see what was going on with it he brought it back i took it apart and found that the flywheel

was loose at this point i checked everything and put the jet ski back together for second time and took it out to my local lake myself and rode it after a hour of riding the jet ski perfomed the same problem for me as it did for him so at this point i know for certain it has a crankshaft issue i then informed mr rokita that it has a crank shaft issue he then sends me photos and mesages from previous owner and the jet ski having crank shaft problems in the past at that time i told him i know its not what you wanna hear but your gonna have to either replace the crankshaft or have it fixed to solve the problem he then asked me if i had a local machine shop i could go thru and i advised him i would take the engine out and he could take it to his own choice of place to perform the work it needed to have done as it was a very critical job and i didnt want any liability issue's so he would have to do that also gave him a couple other opitions of how to take care of the issue but none of the choices were a cheap fix and wasnt sure what kind of money he was looking to spend he then states he is sick and livid about it he then asked about selling it for parts and i told him it was a big hassel and takes someone that does it all the time and he would never get his money out of it he then attemped to get me to fix it in many different ways that was not correct and would lead to failure i then advised him again i woudnt do any work that way because of the liability issues.on aug13 i sent mr.rokita a couple photos of personal jet skis i was gonna sell do to i dont ride them enough i sent photos and descriptions of the jet skis and told him i didnt need to or have to sell them but would if he knew what i meant told him he could check them out and ride them no commitments he said he wanted to buy one or the other he then asked my opnion which one i though would be best for him i gave him my honest opinion from the questions he asked me but told him he could deciede for himself at this point he say lets talk tomorow to finialize what jet ski he wants to buy and what to do with his original jet ski he brought .on aug 15 Todd Rokita and i talked and he had decided he wanted to buy a 2001 seadoo gtx limited and wanted to pick up on Aug 16 and was trying to get me to take his original jet ski i told him i didnt want it.at this point i unloaded the original jet ski Todd Rokita had from his trailer and loaded the 2001 seadoo gtx he was coming to get and sent him a photo of it and told him it was ready to go.on aug16 Todd Rokita showed up to my residence to finish up the purchase of the 2001 seadoo gtx at this time we went over it having a new built motor and it was under break in period and he had to follow break in conditions or it could cause major engine failure told him no consist rpms and definintly no full throttle runs for atleast 10 hours and he said he completly understand i also told him he could find the same proceedure in the seadoo owners manual he went over the jet ski showed him everything was is perfect working order showed it ran no issues and tried to get him to take to my local lake and ride it to make sure it was what he wanted and there was no issues he was concerned with he told me he didnt have time as he has to meet someone at his place really soon and i told him i wished he would ride it first to make me feel more comfortable about it and he still insisted he was okay with not riding it at this point i gave Todd Rokita a clean clear title signed off from previous owner no date no selling price as i never

registered the jet ski and a bill of sale from myself stating i sold him the jetski as is for the selling price of $3000 dollars and away he went.On aug 17 later in the evening Todd Rokita sent me a text message video saying i took this thing out for a full throttle run it bogged down and died and he was stuck on the water i tried to navigate him on some ways to get it to start to get him back to land with no success i then told him to bring the jet ski back and we would go over it together to see what was wrong with it he brought it back the same evening and we did just that first we did a compression check front cylinder 100 psi back cylinder 0 psi which both cylinders should read the same psi i told him it was blown up but we would use a endoscope to look down in the cylinders to confirm that was what was going for sure and indeed it was found to be blown up at this point Todd Rokita demanded i give his money back and i advised him that's not how it works when you buy something as is and have already been out beating on it after knowing no full throttle runs during break in period was a condition of the sale but me being who i am i told him i would meet him in the middle with the issue as my reputation means more than the money at this point i told him i would order all replacement parts out of my pocket and do all the labor to get it back to right if he would like me to do that and he was in agreeance that would make him happy so i ordered all replacement parts including upgraded parts he wanted installed that cost me $400 dollars extra that he said he would pay for.when parts arrived i rebuilt complete top of engine on aug 31 Todd Rockita text me and asked if we was good to meet the next day to test the jet ski out i told him that was fine.on sep 1 Todd Rokita texted and said he would be at my residence at 12:30 when he arrived we went over several steps to ensure everything was good on the jet ski we first did a compression check both cylinders checked out at 100 psi which is perfect and he agreed next we hooked a water hose up to the jet ski and started it ran it for a short bit with a few slight throttle increase to show no running issues as well as no over heating issues at this point we go over the same break in conversation as the first time and told him anytime you build or rebuild an engine it requires 10 hours break in time period if you dont follow the correct break in strategy it will destroy the engine again and he said he completly understood when we done with that he noticed another personal jet ski of mine and told me he has a buddy looking for one and i told him i didnt really wanna sell it but i would for the right price and then we left to my local boat ramp on lake manitou rochester indiana for the last step and that was a test ride Todd Rokita rode the jet ski for 1 hour and 15 mins no issues at all at this time we loaded jet ski on the trailer and pulled it out of the water and pulled in a parking spot and park at this moment Todd Rokita shook my hand and said he was completly happy with the jet ski and thank you for doing what i did we good in his eyes i advised him it wasnt a problem and just know from here on out any damages or problems that occur was his own personal problem at this point and he agreed to that as well.On Sep2 Todd Rokita texted me and said he had put more hours on the jet ski at his lake and everything was good he also said he was reading the owners manual for the 2001 seadoo gtx about different things and also asked for photos and info on the jet ski he thought

his buddy may want to buy so i sent him 2 photos and info about the jet ski never heard anything else.On Sep 18 16 days later i messaged Todd Rokita and asked him whatever happen with his buddy and the jet ski at this time i advised him that i was trying to buy a corvette and need the extra cash so i would make someone a great deal on the jet ski if it was bought by friday he asked what kind of corvette i was buying and he said he may have corvette he could sell me i told him he couldnt come close to the deal i had going on plus his car wasnt what i was looking for he then said he was gonna go ahead and buy the other jet ski he then asked if the title was in my name and i told him it was an open title just like the last jet ski was signed off from previous owner no date no selling price also sent him photos of front and back of title and he said ok let plan for 2:30 tomorrow.On Sep 19 Todd Rokita messaged me and said im bringing the money today but may not have a vechile to take it with me he said he would come back and get it sunday or monday and i told him that was fine id give him the title and keys and he could pick it up at his convenience he said ok later on the same day he sends me a video of himself riding the 2001 seadoo gtx jet ski i sold him having and issue i asked him what was up with it he stated so far looks like a fouled spark plug said he checked compression both was at a 100 psi just like the day he got it back he also stated that after 7 hours of 4500 rpm or less break in time i took it out for it first open throttle run he also stated he wanted to square up on the $400 dollars he owed me that was never paid at the time he got the jet ski back the second time he stated he replaced the spark plugs and was good to go and was gonna take it out for another run he said it ran well for a while and then died heard some clunking around wont turn over doesnt sound good still on the water a few minutes later he messaged said he was getting towed in at this time he sent me a video of what it was doing and asked what i thought it was i told him i wasnt 100% sure what was up but at this point he is late as im waiting on him to show up to complete the deal on the second jet ski so i message and ask him if he is still coming my way to finish deal and he says not really in the mood to buy another jet ski anymore given this event but dont wanna leave you stranded either do you have a backup plan/buyer?i told him i was depending on his word to make my deal happen for sure but could not make him buy something if he didnt want to period so i told him to tell me what it was gonna be id let him make the decision but either way i needed to know i never got a response so i called Todd Rokita and he stated he was thinking he should be able to bring the first jet ski back after messing it up a second time and give me $500 for the jet ski he was supposed to purchasing from me at this time i told him he was absolutely nuts i wasnt selling him anything and that he could take the jet ski i sold him along with the $400 he owed me and come get his original jet ski outta my yard and shove all three of them up his ass and loose my number and thats the last i ever heard from the guy.

FULTON CO CLERK OFFICE
815 MAIN ST RM 206
ROCHESTER, IN 46975-1546

ELECTRONIC SCAN REQUIRED

Attention Carrier on Route #R005

This piece is being monitored for Delivery and Scanning accuracy

G

USPS GROUND ADVANTAGE™

FULTON CO CLERK OFFICE
815 MAIN ST RM 206
ROCHESTER, IN 46975-1546

Zone 1

JESS SAMPSON
5943 N 600 E
ROCHESTER, IN 46975-9754

Nonstandard Parcel

GROUND ADVANTAGE™

USPS SIGNATURE TRACKING #

9202 1901 0661 5400 0213 7462 09

Electronic Rate Approved #901066154

25D01-2512-PL-000903

3:00 P.M

IMpbConfirmation11x8FlatLabel v1.2.23.0

A-17

25D01-2512-PL-000903
Fulton Superior Court

Filed: 12/4/2025 9:46 AM
Clerk
Fulton County, Indiana

STATE OF INDIANA
IN THE FULTON COUNTY SUPERIOR/CIRCUIT COURT

CAUSE NO. ____________________

| | |
|---|---|
| STATE OF INDIANA,<br>Plaintiff,<br>v.<br>JESS SAMPSON,<br>Defendant. | **SUMMONS** |

TO DEFENDANT: Jess Sampson
5943 N 600 E
Rochester, IN 46975

You have been sued by the person named "Plaintiff," in the court stated above.

The nature of the suit against you is stated in the complaint that is attached to this summons. It also states the relief sought or the demand made against you by the Plaintiff.

You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or a judgment by default may be rendered against you for the relief plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: 12/4/2025

[signature] (Seal)
Clerk of the Court of Fulton County

FULTON COUNTY COURTS SEAL INDIANA

Plaintiff designates the following manner of service:

**Certified Mail at the above address**

THE OFFICE OF THE INDIANA ATTORNEY GENERAL

By: /s/ Mark M. Snodgrass
Mark M. Snodgrass
Deputy Attorney General
Attorney Number 29495-49

Office of Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-6784
Fax: (317) 233-4393
Mark.Snodgrass@atg.in.gov

25D01-2512-PL-000903
Fulton Superior Court

Filed: 12/4/2025 9:46 AM
Clerk
Fulton County, Indiana

STATE OF INDIANA
IN THE FULTON COUNTY SUPERIOR/CIRCUIT COURT

CAUSE NO. ____________________

| | |
|---|---|
| STATE OF INDIANA,<br>Plaintiff,<br>v.<br>JESS SAMPSON,<br>Defendant. | **COMPLAINT FOR INJUNCTION, RESTITUTION, CIVIL PENALTIES, AND COSTS** |

## I. INTRODUCTION

1. The State of Indiana, by Attorney General Theodore E. Rokita and Deputy Attorney General Mark M. Snodgrass, commences this civil action under the Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5-1 *et seq.*, and the Regulation of Vehicle Merchandising Act, Ind. Code § 9-32-11-1 *et seq.*, for injunctive relief, consumer restitution, civil penalties, costs, and other relief.

2. The Defendant, Jess Sampson, frequently advertises and sells vehicles on Facebook Marketplace while engaging in a variety of deceptive and unfair acts and practices. Sampson advertises and sells numerous motor vehicles, watercraft, trailers, and vehicle parts despite not having any of the required licenses issued by the Indiana Secretary of State to do so. Sampson also does not obtain titles in his name for the vehicles he owns and sells as required by Indiana law. Sampson instead "title jumps" the vehicles from the previous owners to his buyers, skipping titling the vehicles in his own name. Sampson

has also made multiple misrepresentations in Facebook Marketplace advertisements, as well as directly to consumers. Sampson has represented in Facebook Marketplace advertisements that he is "licensed" when he is not. Sampson also has misrepresented the quality of the vehicles he sells by representing the engine of a specific vehicle had been rebuilt when it had not, as well as represented specific repairs had been made to the vehicle when such repairs had not been performed. Sampson's misrepresentations and actions are unfair, abusive, and deceptive, and constitute violations of Indiana's Deceptive Consumer Sales Act and Regulation of Vehicle Merchandising Act.

## II. PARTIES

3. The plaintiff, the State of Indiana, is authorized to bring this action and to seek injunctive and other statutory relief under Ind. Code § 24-5-0.5-4(c).

4. The defendant, Jess Sampson, is an individual engaged in the repair, advertisement and sale of used motor vehicles, watercraft, trailers, and vehicle parts to Indiana consumers, with a principal place of business in Fulton County, located at 5943 N 600 E, Rochester, Indiana, 46975.

## III. FACTS

### A. Selling Motor Vehicles and Watercraft without a License

5. Under Ind. Code § 9-32-11-1(a)(3), all dealers advertising and selling used motor vehicles, watercraft and trailers operating within the State of Indiana must obtain a dealer license from the Indiana Secretary of State ("SOS").

6. Sampson has never held a license issued by the Indiana SOS to sell motor vehicles, watercraft or trailers.

7. Sampson has offered for sale and/or sold numerous motor vehicles, watercraft and trailers, in-person and through Facebook Marketplace utilizing the account name "JessMarcy Sampson."

8. The exact number of motor vehicles, watercraft and trailers offered for sale and/or sold by Sampson is unknown but on information and belief, the number of motor vehicles, watercraft and trailers Sampson has offered for sale and/or sold requires him to obtain the relevant licenses under Ind. Code § 9-32-2.1-44 and Ind. Code § 9-32-2.1-46.

**B. Storing, Rebuilding, and Selling Vehicle Parts Without a Salvage Rebuilder's License**

9. Under Ind. Code § 9-32-11-1(a)(5), all Automotive Salvage Recyclers operating within the State of Indiana must obtain a license from the Indiana Secretary of State ("SOS"). An Automotive Salvage Recycler is defined by Ind. Code § 9-32-9-1 in part as "any person that acquires, sells, or advertises for sale a used major component part of a motor vehicle; wrecks, dismantles, shreds, compacts, crushes or otherwise destroys a motor vehicle for resale of the major component parts of the motor vehicle...or engages in the business

of storing, disposing, salvaging or recycling of operable or inoperable motor vehicles, vehicle hulks, or parts of motor vehicles."

10. Sampson engages in the business of storing, disposing, salvaging and recycling of motor vehicles, vehicle hulks, and parts of motor vehicles, including watercraft, at his home address, located at 5943 N 600 E, Rochester, Indiana, 46975.

11. Sampson advertises the sale of used watercraft parts, including major component parts, through Facebook Marketplace utilizing the account name "JessMarcy Sampson."

12. In one such Facebook Marketplace advertisement titled "2021 Jetski Parts" Sampson represented that "I have tons of Jetski parts for sale all makes and models..." accompanied by a picture of numerous salvage jet skis arrayed and stored on Sampson's property.

13. Sampson sells major component parts of motor vehicles, including watercraft parts.

C. **Title Jumping Motor Vehicles, Watercraft and Trailers**

14. Indiana residents must obtain certificates of title for all vehicles they own under Ind. Code § 9-17-2-1. An Indiana resident must apply for the certificate of title within forty-five (45) days of purchasing the vehicle in accordance with Ind. Code § 9-17-2-14.7. The resident would also pay all sales tax owed to the state upon applying for a certificate of title with the Indiana Bureau of

Code only apply to new Indiana Resident

60 day

Motor Vehicles ("BMV") if the consumer purchased the vehicle from a private seller.

15. Sampson purchased and owned numerous motor vehicles, watercraft, and trailers including all motor vehicles, watercraft, and trailers he advertised and sold on Facebook Marketplace, without applying for a title to the motor vehicles, watercraft, and trailers in his name.

16. Failure to obtain a title in the current owner's name and simply signing the title to the next purchasing consumer is referred to as "title jumping."

17. Title jumping a vehicle requires falsely representing to the purchasing consumer and the BMV, that the prior owner of the vehicle, rather than the current owner, is the seller of the vehicle to the purchasing consumer.

18. Title jumping creates numerous issues, including failure to pay the required sales tax for the vehicle purchase, creates a false transaction record, creates potential title issues for the new purchasing consumer due to the falsified transaction log on the title, as well as potentially leaves the new purchasing consumer with late fee charges with the BMV.

**D. Misrepresentations Regarding Licensure**

19. In Facebook Marketplace advertisements under the account name "JessMarcy Sampson," Sampson represented that he "H[as] tons of jetski parts for sale all makes and models also buy and service all power sports jet skis, atv's boats, snowmobiles, and motorcycle's I am licensed and insured...."

20. Sampson is not currently, nor has he ever been licensed to advertise or sell any type of motor vehicle or watercraft in the state of Indiana, nor is Sampson licensed to advertise or sell motor vehicle or watercraft parts.

**E. Misrepresentations Regarding Repairs and Quality of Vehicles**

21. Sampson represented to Todd Rokita that he could repair Rokita's Yamaha jet ski.

22. Roktia paid Sampson $1,400.00 to perform the repairs, plus supplied Sampson with $700.00 worth of parts.

23. Sampson was unable to repair the Yamaha jet ski as represented and instead urged Rokita to purchase a 2001 Seadoo RX 951 ("the Seadoo") that Sampson owned and was advertising for sale.

24. Sampson made multiple representations through text messages to Rokita regarding quality of the Seadoo, including the following statements:

24.1. "I have been completely thru it with every single piece of the engine being brand new other than the block so I know what's been done...."

24.2. "It has a brand new oil pump...."

24.3. "Food for thoughts 01 Seadoo gtx direct port fuel injection 135 hp has completely rebuilt engine...."

24.4. "The Seadoo pics are when I bought it and yes it's been completely gone thru new crank, bearings seal pistons rings when I say completely I mean everything...."

25. On August 16, 2025, Rokita purchased the Seadoo from Sampson for $3,000.00.

26. The title for the Seadoo was not in Sampson's name when Sampson turned the title over to Rokita and as a result, Rokita incurred additional fees from the BMV.

27. Upon launching the Seadoo, Rokita found the Seadoo needed major repairs.

28. The Seadoo's engine had not been rebuilt with every piece of the engine being "brand new," it did not have a "brand new" oil pump, and the Seadoo needed a new crankshaft and rod bearing, despite Sampson's explicit representations to the contrary.

29. On September 26, 2025, Rokita paid a mechanic $5,912.33 to replace many of the engine parts Sampson had represented as "rebuilt" and "brand new" to get the Seadoo running and into the approximate condition Sampson had represented.

30. Sampson knowingly committed the actions described in this Complaint.

## IV. CAUSES OF ACTION

### COUNT I:
### VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT- ADVERTISING VEHICLES FOR SALE WIHOUT A LICENSE

31. The State realleges Paragraphs 1 through 30 of this Complaint.

32. Sampson regularly engages in "consumer transactions" under Ind. Code § 24-5-0.5-2(a)(1).

33. Sampson is a "supplier" under Ind. Code § 24-5-0.5-2(a)(3).

34. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by advertising motor vehicles and watercraft for sale without a license as required by Ind. Code § 9-32-11-1.

35. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-10(a)(1)(A) by soliciting to engage in consumer transactions for the sale of motor vehicles, watercraft, and trailers without a dealer license required by Ind. Code § 9-32-11-1.

36. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-10(a)(1)(B) by soliciting to engage in consumer transactions for the sale of motor vehicles, watercraft, and trailers without a dealer license required by Ind. Code § 9-32-11-1, without intending or being eligible to obtain such a license.

## COUNT II:
## VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT- SELLING VEHICLES WIHOUT A LICENSE

37. The State realleges Paragraphs 1 through 36 of this Complaint.

38. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by selling motor vehicles and watercraft without a license as required by Ind. Code § 9-32-11-1.

39. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-10(a)(1)(C) by engaging in consumer transactions for the sale of motor vehicles, watercraft, and trailers without a dealer license required by Ind. Code § 9-32-11-1.

## COUNT III: VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT- ADVERTISING THE SALE OF MAJOR COMPONENT PARTS WIHOUT A LICENSE

40. The State realleges Paragraphs 1 through 39 of this Complaint.

41. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by advertising for sale the major component parts of motor vehicles and watercraft without a license as required by Ind. Code § 9-32-11-1.

42. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-10(a)(1)(A) by advertising for sale major component parts of motor vehicles and watercraft without a license as required by Ind. Code § 9-32-11-1.

## COUNT IV: VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT- SELLING MAJOR COMPONENT PARTS WIHOUT A LICENSE

43. The State realleges Paragraphs 1 through 42 of this Complaint.

44. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by selling major component parts of motor vehicles, watercraft, and trailers without a license as required by Ind. Code § 9-32-11-1.

45. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-10(a)(1)(C) by selling major component parts of motor vehicles, watercraft, and trailers without a license as required by Ind. Code § 9-32-11-1.

COUNT V:
VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT- STORING, DISPOSING, AND SALVAGING VEHICLES WIHOUT A LICENSE

46. The State realleges Paragraphs 1 through 45 of this Complaint.

47. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by storing, disposing, salvaging or recycling of operable or inoperable motor vehicles, including watercraft, vehicle hulks, or parts of motor vehicles without a license as required by Ind. Code § 9-32-11-1.

48. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-10(a)(1)(C) by storing, disposing, salvaging or recycling of operable or inoperable motor vehicles, including watercraft, vehicle hulks, or parts of motor vehicles without a license as required by Ind. Code § 9-32-11-1.

COUNT VI:
VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT- FAILURE TO TITLE VEHICLES

49. The State realleges Paragraphs 1 through 48 of this Complaint.

50. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by failing to title in his name motor vehicles, watercraft, and trailers that he owned, as required by Ind. Code § 9-17-2-1 and 9-17-2-14.7.

51. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by "title jumping" motor vehicles,

watercraft, and trailers and incorrectly completing titles to create false paperwork that incorrectly showed an individual other than Sampson was the seller of the vehicles.

COUNT VII:
VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-MISREPRESENTATIONS REGARDING LICENSURE

52. The State realleges Paragraphs 1 through 51 of this Complaint.

53. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by representing in Facebook Marketplace advertisements that he was "licensed" when he was not.

COUNT VIII:
VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-MISREPRESENTATIONS REGARDING QUALITY OF WATERCRAFT

54. The State realleges Paragraphs 1 through 53 of this Complaint.

55. Sampson committed unfair and deceptive acts, omissions, and practices violating Ind. Code § 24-5-0.5-3(a) by making various representations to Todd Rokita as recounted in Paragraphs 21-29 above when such representations were false.

56. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-3(b)(1) by making various representations to Todd Rokita as recounted in Paragraphs 21-29 above when such representations were false.

57. Sampson committed deceptive acts violating Ind. Code § 24-5-0.5-3(b)(2) by making various representations to Todd Rokita as recounted in Paragraphs 21-29 above when such representations were false.

## COUNT IX:
## KNOWING VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT

58. The State realleges Paragraphs 1 through 57 of this Complaint.

59. Sampson committed the unfair and deceptive acts asserted in this Complaint with knowledge of his unfair and deceptive acts, subjecting Sampson to penalties under Ind. Code § 24-5-0.5-4(g).

## COUNT X:
## INCURABLE DECEPTIVE ACTS

60. The State realleges Paragraphs 1 through 59 of this Complaint.

61. The unfair and deceptive acts asserted in this Complaint are incurable deceptive acts and were committed by Sampson as part of a scheme, artifice, or device with intent to defraud or mislead, subjecting Sampson to penalties under Ind. Code § 24-5-0.5-8.

## COUNT XI:
## VIOLATIONS OF THE REGULATION OF VEHICLE MERCHANDISING ACT

62. The State realleges Paragraphs 1 through 61 of this Complaint.

63. Sampson violated Ind. Code § 9-32-11-1 by advertising, offering for sale, and/or selling motor vehicles, watercraft, and trailers without a license.

64. Sampson violated Ind. Code § 9-32-11-1 by advertising and/or selling major component parts of motor vehicles, including watercraft, without a license.

65. Sampson violated Ind. Code § 9-32-11-1 by storing, disposing, salvaging or recycling of operable or inoperable motor vehicles, including watercraft, vehicle hulks, or parts of motor vehicles without a license.

## V. RELIEF

66. The State requests the Court enter judgment against the Defendant, Jess Sampson, for the relief described in Paragraphs 67 through 73 of this Complaint.

67. The State seeks a permanent injunction, under Ind. Code § 24-5-0.5-4(c)(1), enjoining Jess Sampson, his agents, representatives, employees, successors, and assigns, from:

67.1. Advertising or offering for sale, in any medium, including online, the sale of any vehicle or watercraft without a valid Indiana motor vehicle dealer license issued by SOS, unless the vehicle is titled in the name of Jess Sampson and is his personal vehicle, and such sales do not exceed the number of sales which would require licensure;

67.2. selling any vehicle or watercraft without a valid Indiana motor vehicle dealer license issued by SOS, unless the vehicle is titled in the name of Jess Sampson and is his personal vehicle and such sales do not exceed the number of sales which would require licensure;

67.3. advertising or offering for sale, in any medium, including online, the sale of any major component part of a motor vehicle without a valid Indiana Automotive Salvage Recycler license issued by SOS;

67.4. selling any major component part of a motor vehicle without a valid Indiana Automotive Salvage Recycler license issued by SOS;

67.5. storing, disposing, salvaging or recycling of operable or inoperable motor vehicles, vehicle hulks, or parts of motor vehicles without a valid Indiana Automotive Salvage Recycler license issued by SOS;

67.6. engaging in any other activities defined under Ind. Code § 9-32-9-1 without a valid Indiana Automotive Salvage Recycler license issued by SOS;

67.7. failing to apply for a title with the Indiana BMV in his name for any vehicle or watercraft in which he has an ownership interest within forty-five (45) days from the date Sampson purchased the vehicle;

67.8. representing to consumers or in advertisements that he is "licensed" when he is not;

67.9. representing vehicles or watercraft are of a certain quality when they are not or representing engines or parts have been replaced or are new when they are not;

67.10. committing an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction, in violation of Ind. Code § 24-5-0.5-3(a);

67.11. representing that the subject of a consumer transaction has characteristics, uses, or benefits that it does not have, which Sampson

knows or reasonably should know it does not have, in violation of Ind. Code § 24-5-0.5-3(b)(1); and

67.12. representing that the subject of a consumer transaction is of a particular standard, quality, grade, style or model if it is not, and if Sampson knows or reasonably should know it is not, in violation of Ind. Code § 24-5-0.5-3(b)(2).

68. The State seeks consumer restitution, under Ind. Code § 24-5-0.5-4(c)(2) and Ind. Code § 9-32-16-13(b)(2)(C), in the amount of eleven thousand, twelve dollars and thirty-three cents ($11,012.33) payable to the Office of the Attorney General, for the benefit of Todd Rokita.

69. The State seeks costs, under Ind. Code § 24-5-0.5-4(c)(4), awarding the Office of the Attorney General its reasonable expenses incurred in the investigation and prosecution of this action.

70. The State seeks civil penalties, under Ind. Code § 24-5-0.5-4(g), on Count IX of this Complaint, for Sampson's knowing violations of Ind. Code § 24-5-0.5-3(a) and Ind. Code §§ 24-5-0.5-3(b)(1) and (2), payable to the State of Indiana, in the amount of five thousand dollars ($5,000.00) per violation.

71. The State seeks civil penalties, under Ind. Code § 24-5-0.5-8, on Count X of this Complaint, for Sampson's incurable deceptive acts, payable to the State of Indiana, in the amount of five hundred dollars ($500.00) per violation.

72. The State seeks civil penalties, under Ind. Code § 9-32-17-1, on Count XI of this Complaint, for Sampson's violation of the Vehicle Merchandising Act,

payable to the State of Indiana for the benefit of the Secretary of State's Dealer Enforcement Account, in the amount of ten thousand dollars ($10,000.00) per violation.

73. The State seeks all other just and proper relief.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

By: /s/ Mark M. Snodgrass
Mark M. Snodgrass
Deputy Attorney General
Attorney No. 29495-49

Office of Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-6784
Fax: (317) 233-4393
Mark.Snodgrass@atg.in.gov

**From:** Dan May
**To:** DC Grievance
**Subject:** Theodore E. Rokita v. Jess Sampson
**Date:** Friday, December 19, 2025 10:09:04 AM
**Attachments:** grform.pdf
Narrative.pdf
Invoice for repairs.pdf
Demand from Rokita AG.pdf
complaint.pdf
summons.complaint.pdf

---

You don't often get email from danjmayattorney@gmail.com. Learn why this is important

**CAUTION:** External email

See grievance form attached and documents in support.